586 So.2d 786 (1991)
Charles H. REID
v.
MISSISSIPPI STATE BAR.
No. 89-BA-1149.
Supreme Court of Mississippi.
September 4, 1991.
Rehearing Denied October 23, 1991.
*787 Charles H. Reid, pro se.
Michael B. Martz, Jackson, for appellee.
En Banc.
HAWKINS, Presiding Justice, for the Court:
Charles H. Reid appeals from an order of the complaint tribunal permanently disbarring him from the practice of law for unauthorized conversion of funds from his trust account. We affirm.

FACTS
Charles H. Reid has been a practicing attorney in Hattiesburg since 1973.
On August 1, 1984, Russell T. and Betty M. Cavataio executed a deed of trust on realty in Poplarville in favor of Muriel A. Reagan to secure a $14,000 promissory note, payable in 60 monthly installments of $311.42 each.
Mrs. Reagan died May 19, 1985, leaving four children as her sole heirs-at-law, namely: David, Carol Reagan Thomas, Amy Reagan Stewart and Jette Reagan McDougall. Her estate was administered and closed that year.
The record does not disclose when, but either the last of 1985 or the first of 1986 the Cavataios wanted to pay off the amount due under the note. The record does not disclose the time or precisely who Reid purported to represent, but he did contact Mrs. Reagan's children about the Cavataios paying off the balance due on the note, which he calculated to be $10,362.45.
Again, the record does not disclose precisely when, but in February, 1986, the Cavataios paid Reid by check the sum of $10,362.45, which on February 14 he deposited along with other funds in the "Charles H. Reid Trust Account" in the Bank of Hattiesburg, a branch of Great Southern National Bank. Although Reid's trust account on February 28, 1986, showed a balance of only $3,904.41, he had as of that date disbursed none of the $10,362.45 to the four Reagan children.
Mrs. McDougall made inquiry of Reid as to the money due them, and on March 11, 1986, he wrote her:
Please excuse this delay. Please find enclosed a copy of my letter dated February 19, 1986. Upon the return of properly executed cancellations and proof of succession, we will mail separate payments to all interested parties. Please furnish me with their addresses.
The February 19, 1986, letter had never been received by Mrs. McDougall. It read:
According to the amortization schedule, the sum of $10,362.45 is owed to you on the Deed of Trust from the Cavataios to Muriel A. Reagan. I am holding such funds in my possession and will deliver same to you upon my receipt of a copy of the death certificate of Muriel A. Reagan and evidence of the succession of her estate. It is my understanding that payment should be made to you of the entire amount, and you will disburse the same to all of the interested parties.
On June 13, 1986, Hugh L. Brown, representing Mr. Thomas, wrote Reid enclosing a copy of the note showing the amortization schedule, and then noted that $10,637.66 was owed. The letter also enclosed the original cancellation of the deed of trust to be filed after Reid had mailed checks to each of the four children.
On July 8, 1986, Reid made four separate checks drawn on his trust account, one to each of the Reagan children. Mrs. McDougall deposited her check, but it was returned on July 25, 1986, because of insufficient funds. Mrs. McDougall telephoned Reid who promised he would wire the money to cover the amount of the check that day. She had to make additional telephone calls, however, and she received her money about a week later.
*788 The Bar filed a complaint against Reid October 28, 1987, and after answering the complaint there was a stipulation entered in which Reid admitted the above facts, and that he had appropriated the Reagan children's money to his own use.
On a summary judgment motion, the tribunal entered an order disbarring Reid.

LAW
When a lawyer receives and deposits in his trust account funds belonging to others, and prior to disbursing any of such funds to the lawful payees, the trust account shows a total deposit less than the amount he had been entrusted with, this supports the conclusion that the attorney has converted funds to an unauthorized and unlawful use. Jackson v. State Bar, 25 Cal.3d 398, 158 Cal. Rptr. 869, 600 P.2d 1326 (1979); Giovanazzi v. State Bar of California, 28 Cal.3d 465, 169 Cal. Rptr. 581, 619 P.2d 1005 (1980). Therefore, Reid's trust account several weeks following receipt of $10,362.45 showing a total deposit of $3,904.41, and when he had paid the Reagan children nothing, was, in the absence of explanation, clear evidence of an unlawful conversion. When Reid subsequently by stipulation admitted that he had in fact converted the Reagan heirs' money to his own use, he admitted no more than the bank record itself revealed.
On appeal Reid asks for leniency because he at least admitted his wrongdoing and expressed remorse to the tribunal, and further, that this was the only time a complaint has ever been made against him to the Mississippi State Bar. These are valid mitigating factors which should be considered by a tribunal as well as this Court, and in a less serious offense could well tip the scales in favor of the accused attorney.
There can be no more damaging evidence, however, as to a lawyer's fitness to practice law than mishandling a trust account. The personalities of lawyers are as wide and varied as the rest of the human race. They commit follies, they do things for which they later feel ashamed. Such errant conduct may or may not reflect upon an attorney's fitness to practice law.
Dishonesty does, Brumfield v. Mississippi State Bar Ass'n, 497 So.2d 800 (Miss. 1986), and dishonest conduct by an attorney with his own client goes to the very core of a lawyer's fitness to practice law, Mississippi State Bar v. Odom, 566 So.2d 712, 717 (Miss. 1990) (Sullivan, J., dissenting). There can be no legal profession in the absence of scrupulous honesty by attorneys with other people's money. Public confidence here is vital. There may be worse sins, but the ultimate wrong of a lawyer to his profession is to divert clients' and third parties' funds entrusted to him to an unauthorized use. A lawyer guilty of such conduct exhibits a character trait totally at odds with the purposes, ideals and objectives of our profession.
If creditors are hounding a lawyer, he can take bankruptcy. If he is hungry, he can go to the Salvation Army. But mishandling other peoples' money is a thought he should never entertain.
Embezzlement is a felony in any event. Miss. Code Ann. § 97-23-25 (1972). It is the capital crime of a lawyer to his profession. Odom, supra; Mississippi State Bar v. Moyo, 525 So.2d 1289 (Miss. 1988).
AFFIRMED.
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN and BANKS, JJ., concur.
McRAE, J., not participating according to Supreme Court Internal Rules.