726 So.2d 170 (1998)
The MISSISSIPPI BAR
v.
Floyd J. LOGAN.
No. 96-BA-01077-SCT.
Supreme Court of Mississippi.
November 12, 1998.
Rehearing Denied January 14, 1999.
*171 Michael B. Martz, Jackson, for Appellant.
James A. Becker, Jr., Jackson, Carter O. Bise, Gulfport, for Appellee.
EN BANC.
WALLER, Justice, for the Court:

INTRODUCTION
¶ 1. On October 12, 1995, The Mississippi Bar filed a formal complaint against Logan alleging that he had violated numerous rules of professional conduct. Trial was held before a Complaints Tribunal, which entered judgment dismissing the Bar's complaint. The Mississippi Bar now appeals to this Court.
I. THE COMPLAINT TRIBUNAL'S DECISION TO DISMISS THE CHARGES THE BAR FILED AGAINST MR. LOGAN WAS ARBITRARY AND CAPRICIOUS, NOT SUPPORTED BY SUBSTANTIAL EVIDENCE, MANIFESTLY WRONG AND IN ERROR AS A MATTER OF LAW.
II. THE COMPLAINT TRIBUNAL IMPROPERLY FAILED TO IMPOSE DISCIPLINE AGAINST MR. LOGAN FOR HIS MISCONDUCT.

STATEMENT OF THE FACTS
¶ 2. Joe Sam Owen ("Owen") and Wynn Clark ("Clark"), both attorneys, filed a complaint with the Mississippi Bar Association ("Bar") alleging that Logan had violated certain rules of professional conduct. After investigation of the informal complaint, the Bar filed a formal complaint against Logan alleging violations of Rules 3.3(a)(1), 3.5(a and b) and 8.4(a, d, and f) of the Mississippi Rules of Professional Conduct. The basis of the complaint filed by the Bar was that Logan had impermissible ex parte communication with *172 Magistrate Jack Weldy ("Magistrate Weldy"), who at the time was a Magistrate for the Mississippi Supreme Court.[1]
¶ 3. The allegations of Clark and Owen stem from the matter of George Williams, Executor, et al. v. Owen, et al., 613 So.2d 829 (Miss.1993). Logan represented George Williams and the estate, while Clark represented Owen.[2] The litigation arose over the question of how much of the life insurance proceeds of Charles Williams, deceased,[3] should be applied to satisfy a Williams-Owen partnership note to the Hancock Bank. Charles Williams had purchased life insurance and named the bank as beneficiary. Charles Williams, who had individual notes with the bank as well as the partnership note with Owen, apparently took out the insurance without the knowledge of Owen and paid all premiums from his personal checking account. The trial court applied the proceeds to satisfy the partnership note.
¶ 4. This Court reversed and ordered Owen to contribute to the estate one-half of the partnership debt, which was $99,015.[4] This Court found that Owen and Williams were equally liable for the debts and basic fairness required that each be required to pay one-half (½) of the debt. Id. at 835. Owen filed a petition for rehearing that was denied by mandate of this Court. However, neither the original decision nor the mandate denying the petition for rehearing addressed the issue of interest on the sums ordered contributed by Owen.[5]
¶ 5. Logan wrote a letter to the Supreme Court Clerk requesting that the interest run from the date of the lower court's judgment. The clerk's office instructed Logan to file a formal motion with the Court. Logan filed a motion styled, "Motion To Allow Interest on the Judgment," which was summarily denied by this Court. Subsequently, Logan mailed for filing to the clerk's office a motion to reconsider, or, in the alternative for clarification by written opinion. The clerk's office stamped this motion "received" and entered it into the court's tracking system, but returned the original to Logan with an explanation that court rules did not allow for such a filing.
¶ 6. Logan testified that he had never had this happen before and he was confused as to how the clerk's office could summarily deny his motion. He then contacted the clerk's office inquiring as to why his motion was returned by someone in the clerk's office. Failing to get a satisfactory explanation, he then called several lawyers who he felt might be able to help him or explain what actions he should take next. Failing there and still confused, he placed a telephone call to this Court and ended up talking with Magistrate Weldy.
¶ 7. Logan's telephone records reveal that the number he called on December 4, 1992, was a number in the legal office of the Mississippi Supreme Court. It is unclear whether he specifically called and asked for Magistrate Weldy or whether in response to his questions, he was placed in contact with Magistrate Weldy. It is clear that Logan and Magistrate Weldy knew each other well. He testified that his contact with Magistrate Weldy was purely an effort to seek procedural guidance concerning the motion that the clerk's office had refused to file, in his opinion wrongly, and which was sent back to him. Magistrate Weldy advised him to reduce his *173 dilemma to writing and send it to him and he would check on the status of it. Neither Clark nor Owen were advised of this call, or any of the other five calls which were made, nor were they advised that Logan subsequently sent a letter to Magistrate Weldy.
¶ 8. The following time line sets forth the events which are relevant to issues before this Court.
08/19/92 Original decision of this Court is handed down
09/01/92 Petition for rehearing filed by Owen
09/25/92 Williams' answer served
09/30/92 Owen's motion for leave to file reply served
10/29/92 Petition for rehearing denied and opinion modified by this Court.
11/02/92 Logan requested interest pursuant to Rule 37
11/04/92 Owen's response to motion to allow interest
1/19/92 Supreme Court denies Logan's motion to allow interest
11/25/92 Logan writes letter to bank objecting to disbursement of funds and advising that he had filed motion for reconsideration with this Court on the issue of interest
11/25/92 Logan's motion to reconsider or in the alternative, for clarification by written opinion is served
12/01/92 Logan's motion to reconsider or in the alternative, for clarification is returned un-filed to him by the clerk's office
12/03/92 Letter from Owen to Supreme Court Clerk confirming that motion for reconsideration was not accepted but returned unfiled to Logan
12/04/92 Logan calls Magistrate Weldy
12/07/92 Logan sends letter to Magistrate Weldy & places phone call to him
12/09/92 Owen writes bank advising that there are no motions before this Court and the funds may be disbursed
12/16/92 Logan calls Magistrate Weldy
12/18/92 Logan writes letter to bank advising that matter of interest was not concluded and Supreme Court's decision was not final
12/22/92 Logan calls Magistrate Weldy
12/29/92 Logan writes second letter to the bank and advises them that issue of interest has not been finally decided by this Court
01/28/93 This Court, sua sponte, withdraws its opinion and mandate and issues a substitute opinion and mandate
02/02/93 Logan writes letter to bank pointing out that he was correct in asserting that the issue of interest was still before the Court
02/17/93 Logan files, in the lower court, a motion to determine interest due on the judgment
02/19/93 Logan, by letter, invites Judge Carr to personally contact Justice Dan Lee and have him clarify the meaning of the mandate
02/22/93 Judge Carr responds that personal contact with Justice Lee would be improper
03/08/93 Owen files petition for extraordinary relief with this Court
09/29/93 For first time, Logan, during his deposition, acknowledges ex parte contact with Weldy
¶ 9. The following is a list of Logan's activities and conduct which the Bar claims constitutes impermissible ex parte communication with a judicial official.
12/04/92 Logan contacts Judge Magistrate Weldy by telephone.
12/07/92 Logan, pursuant to request from Magistrate Weldy, sends letter to Magistrate Weldy.
12/07/92 Logan places 1 minute call to Magistrate Weldy.
12/16/92 Logan places two 1 minute calls to Magistrate Weldy.
12/22/92 Logan again calls Magistrate Weldy, who advises him that the Court had sufficient information before it to proceed.
¶ 10. Because the contents of the letter that Logan sent Magistrate Weldy are important as to whether he sought to influence *174 a judicial official, the letter is reproduced below.
I (Logan) am writing this letter to you in an effort to resolve some confusion over the issue of interest on a sum which was awarded to my clients by the Mississippi Supreme Court in the above cause.
This case originally arose as a dispute over the application of certain life insurance on the life of Charles Williams. The case was tried before a chancellor without a jury, and he ruled that sum of $198,029.29 in insurance should be applied to partnership debt of Charles Williams and Joe Sam Owen. This ruling was made on July 25, 1988. We appealed this ruling to the Supreme Court of Mississippi on the basis that the Estate of Charles Williams was entitled to reimbursement by Joe Sam Owen of one-half of his life insurance proceeds applied to the partnership debt. On August 19, 1992, the Court ruled in our favor and awarded us $99,015.00 and reversed the trial court judgment and rendered judgment for us in that sum.
Joe Sam Owen filed a petition for rehearing, which was denied on October 29, 1992. At that time, I wrote a letter to the Clerk requesting that the mandate provide for interest on the $99,015.00 awarded to us by the Supreme Court which had erroneously been denied us by the trial court's opinion on July 25, 1988. I was instructed to file a motion to allow interest on the mandate, and did so on November 4, 1992. The Court denied my motion to allow interest on November 19, 1992. The apparent grounds were that under Rule 40, I could not file a motion to reconsider denial of a petition for rehearing. I was confused by this determination, and on November 25, 1992, I again filed a motion to reconsider the denial of my request for interest on the mandate. A copy of the motion to reconsider is attached for your information.
I would like to first emphasize that on page 16 of the Court's opinion, the Court denied my clients the sum of $5,492.39 in interest. This interest represented interest paid by the Williamses to the Hancock Bank from the period from the date of an agreement until the trial court ordered the judgment paid. Basically when the insurance company tendered the insurance proceeds to the Hancock Bank, the Williamses made an agreement with the bank to hold the funds in escrow in an interest-bearing account until the issue of the insurance proceeds application was resolved. When the trial court ruled, the savings account had accrued the sum of $5,492.39 in interest less than the interest accrued on the partnership note. The Williamses were required to pay that, and the Supreme Court Opinion did not order that repaid by Owen. We did not challenge this ruling of the Supreme Court.
This issue is entirely different from the fact that we have requested interest on the $99,015.00, which the trial court should have awarded us in its opinion of July 25, 1988. Had the court correctly ruled at that time, we would have earned interest on that $99,015.00 from that date. This is a sum in excess of $24,000.00 and a substantial sum. Since Joe Sam Owen has had the use of that money since July 25, 1988, and was not required to pay that sum until the Court's judgment, it seems only equitable that we receive interest in the mandate from the date that the trial court entered its erroneous ruling.
I hope that this information clarifies what I consider to be a grave injustice to my clients. I am writing this letter at your request to provide you the information you need to attempt to clarify the confusion over the procedural difficulties encountered here.

STANDARD OF REVIEW
¶ 11. This Court reviews matters of bar discipline de novo, both as to liability and sanctions. Terrell v. The Mississippi Bar, 635 So.2d 1377,1385 (Miss.1994). This Court has the nondelegable duty of ultimately satisfying itself as to the facts and reaching such conclusions in making such judgments as it considers appropriate and just. Underwood *175 v. Mississippi Bar, 618 So.2d 64, 67 (Miss. 1993). When reviewing attorney disciplinary matters, this Court reviews evidence de novo, and no substantial evidence or manifest error rule shields the tribunal from scrutiny; however, we may give deference to findings of the tribunal due to its exclusive opportunity to observe the demeanor and attitude of witnesses, including the attorney, which is vital in weighing evidence. Parrish v. The Mississippi Bar, 691 So.2d 904, 906 (Miss.1996). The Bar has the burden of proof to show by clear and convincing evidence that Logan violated the Rules of Professional Conduct. Terrell v. The Mississippi Bar, 635 So.2d 1377, 1384 (Miss.1994).

DISCUSSION OF THE LAW

I. THE COMPLAINT TRIBUNAL'S DECISION TO DISMISS THE CHARGES THE BAR FILED AGAINST LOGAN WAS ARBITRARY AND CAPRICIOUS, NOT SUPPORTED BY SUBSTANTIAL EVIDENCE, MANIFESTLY WRONG AND IN ERROR AS A MATTER OF LAW.
¶ 12. Within this assignment of error, the Bar alleges that Logan violated several provisions of the Mississippi Rules of Professional Conduct. Each of the Bar's arguments is analyzed in turn.

FALSE STATEMENTS
¶ 13. Rule 3.3(a)(1) of the Mississippi Rules of Professional Conduct concerns candor toward a tribunal and states:
(a) A lawyer shall not knowingly:
(1) make a false statement of material fact or law to a tribunal;
Miss. R. Prof. Conduct 3.3(a)(1). The word "knowingly" is defined in the terminology section of the rules as actual knowledge of the fact in question. A person's knowledge may be inferred from the circumstances.
¶ 14. After this Court issued its substituted opinion and mandate, Owen filed a petition for extraordinary relief. Owen asked this Court to order Logan to disclose the source and basis of his information for asserting to the banks that the proceeds should not have been distributed when there were no motions pending before this Court. The Bar alleges that Logan violated this rule when he submitted a response to Owen's petition for extraordinary relief. In his motion, Owen accused Logan of having some knowledge of the inner workings of this Court or other knowledge that was not included in the public record. Logan replied that the petition was an "improper accusation by innuendo of wrongdoing on the part of Appellant's counsel (Logan) and the members of this Court." Additionally, he denied "any allegation, inference or innuendo of wrongdoing" on his part.
¶ 15. It is the Bar's position that Logan's response constitutes a violation of Rule 3.3(a)(1) of the ethics rules. The Bar asserts that he should have disclosed all relevant facts to the Court and directs our attention to Mississippi Bar v. Land, 653 So.2d 899 (Miss.1994) and Mississippi Bar v. Mathis, 620 So.2d 1213 (Miss.1993) in support of its assertion that Logan violated Rule 3.3(a)(1).
¶ 16. In Land, the Court found that a deliberate concealment of evidence intended to deceive opposing counsel and client and prevent them from pursuing a claim constituted a violation of the ethics rules. Land, 653 So.2d at 909. In Mathis, the Court held that failure to disclose the fact that an autopsy was performed constituted knowing misrepresentations and was prejudicial to the administration of justice. Mathis, 620 So.2d at 1220.
¶ 17. Here, we are not faced with an instance of an attorney failing to answer a question in a completely truthful manner. Instead, this Court is confronted with the issue of whether a failure to disclose facts that were known only to Logan constitute a knowing false statement to a tribunal.
¶ 18. Logan responds that he has never denied the occurrence of the calls and the letter to Magistrate Weldy. His argument is simply that he cannot be found to have violated an ethical rule because he denied allegations that were brought against him.
¶ 19. A review of Owen's motion reveals that he was not sure how Logan knew that the issue of interest was still before the Court when all of the records indicated that *176 this Court had issued a final mandate and denied all pending motions. Logan denied that he had engaged in any misconduct and called the allegations by Owen "groundless, unsubstantiated and malicious." What he failed to disclose was that he had contacted Magistrate Weldy concerning the matter of interest. Logan acknowledges that neither Owen, nor his attorney, Clark, were made aware of the fact that he had contacted a magistrate at the Supreme Court concerning the issue of interest. The record reveals that the first time Owen or Clark learned that Logan had contacted Magistrate Weldy was when they took Logan's deposition.
¶ 20. At the time Owen made the allegations in his motion to this Court, no one knew that Logan had contacted Magistrate Weldy. It is apparent that Owen and Clark knew that somehow he possessed information that was not available to them, they just did not know how he had obtained it. At this point, it is irrelevant whether Logan's contact with Magistrate Weldy was impermissible ex parte contact with a judicial official. The relevant inquiry is whether he violated Rule 3.3(a)(1) by failing to disclose, in his response, that he had contacted Judge Magistrate Weldy. The only relevant incident is Logan's response to Owen's motion, since 3.3(a)(1), by its language, limits violations to false statements of material facts made to a tribunal.
¶ 21. In his letter to Magistrate Weldy, Logan represented that he had filed a motion to reconsider or, in the alternative for written clarification with this Court. As noted previously, this motion was returned unfiled by the clerk's office. The Bar asserts that Logan's statement that he "filed" a motion constituted a false statement of material fact to a tribunal in violation of Miss. R. Prof. Conduct 3.3(a)(1). They argue that he should be held to the following definition: "To file, on the part of the clerk, is to endorse upon the paper the date of its reception, and retain it in his office, subject to inspection by whomsoever it may concern."
¶ 22. The current version of Black's has a different definition of the term file. "A paper is said to be filed when it is delivered to the proper officer, and by him received to be kept on file as a matter of record and reference." Black's Law Dictionary 628 (6th ed.1990). When used as a verb, it means "[t]o deliver an instrument or other paper to the proper officer or official for the purpose of being kept on file by him as a matter of record and reference in the proper place." Id. Filing with the court is defined as "[d]elivery of legal document to clerk of court or other proper officer with intent that it be filed with court." Id.
¶ 23. Logan contends that filing is accomplished by mail addressed to the clerk. See M.R.A.P. 25(a) M.R.A.P. He urges this Court that the term "filed" is commonly used by lawyers for the act of sending a document to the clerk. He further contends that Magistrate Weldy was not deceived by his use of the term "file".
¶ 24. Magistrate Weldy stated that he was not confused nor did Logan attempt to misrepresent to him that the motion had been filed. He knew that the motion had not been retained by the clerk's office, but it had been received into the court's tracking system. He further stated that he knew the motion was not pending before the Court.
¶ 25. The Bar asserts that whether Magistrate Weldy was deceived is irrelevant. The focus should be on Logan's intent to deceive, not necessarily Magistrate Weldy, but to deceive in general.
¶ 26. Logan's letter to Magistrate Weldy does not mention that his motion was returned unfiled. He did tell Magistrate Weldy that he had filed the motion and he did include a copy of the motion in his letter to Magistrate Weldy. The notation, written on a separate page by the clerk stating that Rule 40 did not provide for such a motion, was not included in the letter to Magistrate Weldy.
¶ 27. We hold that Logan did not violate Rule 3.3(a)(1) by stating that he had "filed" a motion to reconsider in his letter to Magistrate Weldy in light of the testimony of both Logan and Magistrate Weldy. It cannot be said that Logan knowingly misrepresented a material fact to Magistrate Weldy. Furthermore, it cannot be said that he violated Rule 3.3(a)(1) by denying improper conduct in his *177 response to Owen's petition filed with this Court. Owen's petition essentially accused Logan of violating the ethics rules. In his reply, he denied that he had done anything wrong. A denial in a pleading, even if later proven true, is not violation of the ethics rule. Such a finding would preclude attorneys everywhere from asserting defenses in responsive pleadings.

Ex parte COMMUNICATION
¶ 28. Rule 3.5 concerns the impartiality and decorum of the tribunal. It contains the following provisions.
A lawyer shall not:
(a) seek to influence a judge, juror, prospective juror or other official by means prohibited by law;
(b) communicate ex parte with such a person except as permitted by law; or
(c) engage in conduct intended to disrupt a tribunal.
Miss. R. Prof. Conduct 3.5. The Bar alleges that Logan's contacts with Magistrate Weldy were impermissible ex parte contacts. Logan raises several defenses, which are addressed in turn.
¶ 29. First, Logan attempts to argue that magistrates, such as Magistrate Weldy, are not "other officials" as contemplated in Rule 3.5(a). He urges this Court to construe 3.5(a) as not including magistrates in the definition of "other officials."
¶ 30. The Compliance with the Code of Judicial Conduct section of the Code of Judicial Conduct is useful and provides in part:
Anyone, whether or not a lawyer, who is an officer of a judicial system performing judicial functions, including an officer such as a referee of bankruptcy, special master, court commissioner, or magistrate is a judge for the purpose of this Code.
Further, the duties of the magistrates were codified in paragraph 2 of Miss.Code Ann. § 9-3-47 (1991) as follows:
It shall be the duty of such magistrates, under such rules and regulations as the Supreme Court may adopt, to aid and assist the Supreme Court in the performance of its duties, and in the disposition of the causes now pending in the Supreme Court undetermined and in the determination of such causes as may be presented to the Supreme Court for determination.
(emphasis added).
¶ 31. The Bar asserts that Anne McInvale, a staff attorney at the Supreme Court, and Justice Dan Lee testified that the magistrates had the authority to rule on some motions. Ms. McInvale's statement is, at best, inconclusive as to the Bar's proposition. She testified that "the magistrates handled single judge motions for the Court, handled them only in the sense of preparing them, preparing research on them and presenting them to the Court." We find that her testimony does not say that magistrates had the authority to rule on motions.
¶ 32. Similarly, Justice Lee's testimony is, at best, ambiguous. Justice Lee stated, "These kinds of motions will be taken up. It used to be taken up by the magistrates. Now it's going to be taken up by a three member court." Again, it is unclear whether Justice Lee meant that the motions were ruled on by the magistrates or whether he simply meant that the magistrates researched the issues and prepared a memorandum for the assigned justice. It is clear that Logan believed that Magistrate Weldy had the authority to rule on some motions.
¶ 33. Magistrate Weldy testified that the magistrates lacked any authority to make decisions on motions. Logan urges this Court to construe the magistrates as officers of the court in a general sense, i.e., like a law clerk or court administrator, but not an "other official" with whom improper ex parte communication would trigger disciplinary procedures.
¶ 34. We hold that Magistrate Weldy was an "other official" within the meaning of Rule 3.5(a). While Magistrate Weldy may not have had the authority to rule on Logan's motion, his duties included research and preparing memorandums outlining his recommendations, which, according to his testimony, "were quite often followed by the Court." His position with this Court and his title suggest that he was an "other official" as contemplated under the rule. We now turn to whether the contact was impermissible ex parte communication.
*178 ¶ 35. A lawyer shall not have ex parte communication with a judge or other official except where allowed by law. See Miss. R. Prof. Conduct 3.5(b). Logan asserts that his contact with Magistrate Weldy concerned only procedural questions. The Bar counters that it is clear that his communication concerned the merits of the case. The heart of the issue centers around whether: 1) Logan's communications with Magistrate Weldy were permitted; and, 2) if so, did he seek to influence Magistrate Weldy. Neither party cites any authority that is particularly useful to this Court in the resolution of this issue.
¶ 36. Magistrate Weldy testified that it was common for him to speak with lawyers concerning various procedural issues while he was a magistrate at this Court. He did not consider Logan's request to be improper ex parte communication. Magistrate Weldy also did not consider it necessary or ethically required that Owen be contacted concerning Logan's request. According to Magistrate Weldy, this Court utilized the magistrates "to communicate informally with parties involved in order to get the matter in posture so that they [the Court] could deal with them on the merits." In his view, the actions of the clerk were erroneous in that the matter was incomplete. It fell to him to have further communication with Logan and attempt to straighten out the issue.
¶ 37. Justice Lee testified that magistrates were used for "a lot of purposes." He said that there was a problem with people in the clerk's office, "acting as judges and sending things back or doing whatever...." He stated in part:
When they have a problem in the clerk's office, they have somebody in the court they can contact. Other than a judge. That will tell them what to do.
People in the clerk's office, if they've got any questions about it, they're suppose to call, now, I guess it's the chief staff attorney. At that timewell, now I guess chief staff attorney and then magistrates. Of course, most of them have some reason about them and then they are notbut if they don't know what to do when they get something, then they're suppose to contact somebody that does. And I think that's what happened here.
It is not clear whether Justice Lee was referring to the clerk's office or lawyers with a problem when he stated that they could contact the magistrates. The last sentence above indicates that he was referring to lawyers who had problems.
¶ 38. The exact role of the magistrate seems to be unclear. Due to the relatively short existence of the position of magistrate, this Court has never considered this issue. We hold that ex parte communication by a lawyer with a magistrate for the purposes of obtaining procedural advice is not a violation of Rule 3.5 in light of the fact that it appeared to be a common and accepted practice during this time period.
¶ 39. The question of whether or not Logan's communication was purely a procedural question can be discerned from the letter he wrote to Magistrate Weldy. There is no question that Logan contacted Magistrate Weldy by telephone concerning this matter; or, that Magistrate Weldy told him to reduce the dilemma to writing, send it to him and he would try and find out what was going on. An objective reading of the letter reveals much more than a request for procedural guidance, as it is clear that the merits of the case are addressed. Because Magistrate Weldy asked Logan to write the letter, we cannot specifically say this canon has been violated.

OTHER CONDUCT
¶ 40. The Bar's last argument asserts that Logan's actions violated Rule 8.4. Rule 8.4(a)(d) and (f) provide:
It is professional misconduct for a lawyer to:
(a) violate or attempt to violate the rules of professional conduct, knowingly assist or induce another to do s, or do so through the acts of another;
* * * * * *
(d) engage in conduct that is prejudicial to the administration of justice;
* * * * * *
(f) knowingly assist a judge or judicial officer in conduct that is a violation of *179 applicable rules of judicial conduct or other law.
Miss. R. Prof. Conduct 8.4(a)(d) and (f).
¶ 41. The Bar argues that Logan, as a former judge, should be more aware of what constitutes the basic notions of fair play than the average lawyer. It also argues that Logan used his relationship with Magistrate Weldy to gain inside information and bring a matter back before this Court without notifying opposing counsel. Finally, the Bar asserts that there is no excuse for him not to have sent a copy of his letter to opposing counsel.
¶ 42. Logan presents no argument other than to say that the Bar is using Rule 8.4 as a "catch all" based on his alleged misconduct under the other rules. As to the violations alleged under 8.4, he rests on the premise that the Bar failed to prove misconduct under the other rules, and as such, has not proven a violation of Rule 8.4. Logan's characterization of Rule 8.4 is misguided. Rule 8.4 is the "bread and butter" charge in attorney discipline cases; it accompanies almost any other charge in a bar complaint. Mathes v. Mississippi Bar, 637 So.2d 840, 848 (Miss. 1994).
¶ 43. Assuming Logan's communication was strictly procedural, he still should have informed Owen of the inquiry into the matter of interest without the filing of formal motions. Logan knew that Owen had sent a letter to the clerk's office confirming that no motions were pending before this Court. Owen was under the belief that the litigation was over and that the money could be disbursed.
¶ 44. Neither Owen nor the banks involved could understand why Logan was objecting to the disbursement of funds. The forthright thing for Logan to do was to tell Owen of his actions. Instead, he opted not to tell either Owen or the bank of his communications with Magistrate Weldy. In fact, he continued to deny Owen's allegations when he called them "groundless, unsubstantiated, and malicious" in response to Owen's request for extraordinary relief filed with this Court.
¶ 45. Due to the particular facts of this case, it cannot be explicitly said that Logan violated the Rules of Professional Conduct when he failed to send Owen a copy of his "letter" to Magistrate Weldy. Irrespective of this, once Owen made an inquiry to the clerk which was confirmed in writing that there was no motion pending before the Court in this case, Logan had a duty to step forward. Even worse, when Owen sought release of the funds, Logan objected to the disbursal of funds by two separate letters to the bank without disclosing the earlier ex parte contacts or why he believed the matter was still before the Court.
¶ 46. After this Court, on its own motion, withdraw its original opinion and issued a substituted opinion and mandate, Logan wrote to the bank what amounts to an "I told you so letter." He did not divulge the ex parte contacts and his knowledge of these proceedings until forced under oath after a petition for extraordinary relief was filed by Owen. Such conduct violates the "notions of fair play" and is conduct prejudicial to the administration of justice as contemplated under Rule 8.4.

II. THE COMPLAINT TRIBUNAL IMPROPERLY FAILED TO IMPOSE DISCIPLINE AGAINST LOGAN FOR HIS MISCONDUCT.
¶ 47. Previously, this Court has enumerated the purposes of imposing discipline on an attorney who has been found in violation of the Rules of Professional Conduct. See, e.g., Asher v. Mississippi Bar, 661 So.2d 722 (Miss.1995). The purpose "is not to punish the guilty attorney, but to protect the public, the administration of justice, to maintain appropriate professional standards, and to deter similar conduct." Mississippi State Bar Assn. v. A Mississippi Attorney, 489 So.2d 1081, 1084 (Miss.1986).
¶ 48. Factors considered by this Court when imposing punishment on a violating attorney are:
1. Nature of the misconduct involved;
2. The need to deter similar misconduct;
3. The preservation of the dignity and reputation of the profession;
4. The protection of the public; and,
5. Sanctions imposed in similar cases. *180 Mississippi State Bar v. Blackmon, 600 So.2d 166, 173 (Miss.1992).
¶ 49. Logan's misconduct can be characterized as deceit. The need to deter such conduct is clear and pressing. Mississippi Bar v. Mathis, 620 So.2d 1213, 1222 (Miss.1993). "Proliferation of similar actions would undoubtedly produce serious adverse consequences for the reputation and dignity of the profession as well as a general erosion of the principle that our society accomplishes justice through adherence to the `rule of law'." Id. Logan's misconduct does not present a danger to the public.
¶ 50. With regard to sanctions imposed in similar cases, the parties cite no authority to guide this Court. The Bar asks for a substantial suspension if Logan is found to have violated Rules 3.3(a)(1) and 8.4(a and f). If Logan is found to have violated Rules 3.5(a and b) and 8.4(a, d, and f), the Bar asks for a relatively short suspension.
¶ 51. In mitigation, Logan points to the fact that his actions were undertaken in good faith in an attempt to resolve a procedural dilemma. Magistrate Weldy's testimony supports the finding that such communication was not improper ex parte communication. Justice Lee stated that the original mandate issued was an erroneous mandate. However, such support does not diminish the fact that Logan continued to withhold his actions from his opponent, even when it became apparent that Owen and the bank, caught in the middle, had a need to know of Logan's efforts to get the issue of interest back before the Court.
¶ 52. Logan argues that he did not intend to gain any advantage through his actions, he merely wanted this Court to correct an erroneous mandate. He asserts that he has a distinguished record of service the past 33 years and no prior history of disciplinary action. Additionally, he notes that he has already received a reprimand delivered in open court by the trial judge in his oral findings and conclusions in this matter.
¶ 53. We find that an appropriate punishment in this case is as follows: 1) public reprimand; 2) costs associated with the petition for extraordinary relief filed by Owen and those incurred in taking Logan's deposition should be assessed to Logan; and, 3) award of attorney's fees in the amount of $5,000 to Owen for having to file a petition for extraordinary relief.

CONCLUSION
¶ 54. For the foregoing reasons, we find that Logan has violated at least one of the Rules of Professional Conduct. Thus, the finding of the tribunal is reversed and rendered and the punishment below is imposed against Logan.
¶ 55. REVERSED AND RENDERED. FLOYD J. LOGAN SHALL BE PUBLICLY REPRIMANDED IN OPEN COURT BY THE SENIOR CIRCUIT JUDGE IN THE CIRCUIT COURT OF THE FIRST JUDICIAL DISTRICT OF HARRISON COUNTY ON THE FIRST MONDAY OF THE NEXT TERM OF COURT AFTER THIS DECISION IS FINAL. FLOYD J. LOGAN IS ORDERED TO PAY $5,000 ATTORNEY'S FEES TO JOE SAM OWEN. FLOYD J. LOGAN SHALL REIMBURSE JOE SAM OWEN FOR OUT-OF-POCKET EXPENSES INCURRED, INCLUDING THE FILING OF THE PETITION FOR EXTRAORDINARY RELIEF AND IN TAKING LOGAN'S DEPOSITION.
PRATHER, C.J., SULLIVAN, P.J., and BANKS, McRAE, JAMES L. ROBERTS, Jr., SMITH and MILLS, JJ., concur.
PITTMAN, P.J., not participating.
NOTES
[1] Pursuant to Miss.Code Ann. § 9-3-47 (1991), Weldy was appointed to the position of magistrate for the Mississippi Supreme Court. Magistrate Weldy served from October 1, 1990, until May 31, 1995, when the statute authorizing magistrates was repealed.
[2] The record indicates that Owen actively participated as an attorney in his own case.
[3] George Williams is the father of Charles Williams, deceased, and a beneficiary under the will of Charles Williams.
[4] In the opinion of the Court, Owen was ordered to contribute to the estate one-half of the partnership debt. Williams, 613 So.2d at 836. However, based on the record the money was never released from escrow to satisfy the partnership debt prior to the issuance of the substitute opinion and mandate.
[5] Williams was ordered to pay $5,492.39 interest on the partnership note, which represents the interest deficiency between the interest on the note and the interest that the escrow account accumulated. This issue of interest was not contested by Logan and is not an issue before this Court now.