PIERCE, Justice,
 

 for the Court:
 

 ¶ 1. This appeal arises from a formal complaint filed by The Mississippi Bar charging James Grant McIntyre with violating multiple rules of the Mississippi Rules of Professional Conduct. McIntyre confessed to the allegations and was disbarred after a hearing before the Complaint Tribunal. McIntyre appeals that decision to this Court. After review, we affirm the ruling of the Complaint Tribunal.
 

 FACTS
 

 ¶ 2. The Mississippi Bar filed a formal complaint against James Grant McIntyre alleging that he violated Mississippi Rules of Professional Conduct: 1.8(e) (providing financial assistance to a client),
 
 [1]
 
 1.15(a) (commingling funds),
 
 [2]
 
 8.1(b) (failure to provide information to a disciplinary agent),
 
 [3]
 
 and 8.4(a, d) (engaging in conduct detrimental to the administration of justice due to violation of the previously cited rules).
 
 [4]
 

 ¶ 3. McIntyre and the Bar filed agreed findings of fact with the complaint tribunal. In the findings, McIntyre admitted that he had commingled his personal and business funds with his clients’ funds or third-party funds in his lawyer trust account over a four-year period. He further admitted that he had presented checks against his lawyer trust account for payment of personal expenses, business ex
 
 *621
 
 penses, and living or medical expenses of other clients. Bank officials also withdrew funds from McIntyre’s lawyer trust account to satisfy his personal loan obligations and for other unknown reasons. His lawyer trust account was overdrawn and subject to bank fees for insufficient funds. Finally, McIntyre failed to advise the Bar’s Standing Committee on Ethics that he had advanced funds to clients. McIntyre claims the money at issue eventually was returned in full to the clients to whom it belonged.
 

 ¶ 4. McIntyre’s lawyer trust account was with the bank which also held notes on his office building, home, and automobile. Certain debits were made to McIntyre’s lawyer trust account by one of the bank’s loan officers to pay service obligations on McIntyre’s loans. McIntyre alleged that this was done without his knowledge or permission, and he put multiple documents into evidence to demonstrate his attempts to correct this situation. McIntyre asserts in his brief that, “[a]s a result of these unauthorized withdrawals, [he] would have to credit his account with deposits to make up the deficiency the bank created.” McIntyre did not move his lawyer trust account to another bank during the four-year period in question (2001-2004) to prevent this problem. He also personally wrote checks from his lawyer trust account to pay personal and business expenses.
 

 ¶ 5. McIntyre presented witnesses and affidavits of clients and members of the bar to testify to the nature of his character. He also introduced into evidence fifteen affidavits from former clients, each stating that he or she was satisfied with McIntyre’s representation and had received the money he or she was due at the conclusion of their case. Furthermore, McIntyre’s current secretary, Renee Ed-monson, testified that the operating account and the lawyer trust account for McIntyre’s firm now are kept at two separate banks.
 

 ¶ 6. The Bar introduced McIntyre’s pri- or disciplinary record in aggravation. McIntyre has been reprimanded six times, five times for what the Bar considered “minor ethical violations.” He received one private reprimand and four informal admonitions as a result of the five “minor” violations. In one instance in 1988, McIntyre was suspended from the practice of law for one year for borrowing money from a client without following the appropriate regulations as set forth in the Rules of Professional Conduct.
 

 ¶ 7. The complaint tribunal issued an order finding McIntyre had violated Rule 1.8(e) by lending money to a client for living and medical expenses without complying with the appropriate regulations; Rule 1.15(a) for failing to prevent commingling of funds; and Rule 8.4(a and d) for violating the Rules of Professional Conduct and therefore engaging in conduct that is detrimental to the administration of justice. The tribunal also found that McIntyre’s mitigation evidence was inapplicable and did not warrant a less severe punishment. Furthermore, the tribunal found McIntyre’s prior disciplinary record to be an aggravating factor, and ordered McIntyre be disbarred. From that order, McIntyre appeals.
 

 ANALYSIS
 

 ¶ 8. McIntyre raises the four following issues on appeal:
 

 I. Whether the Tribunal erred with regard to misappropriation of funds and the relevant burden of proof.
 

 II. Whether the Tribunal erred in finding there were no mitigating factors that favored McIntyre.
 

 
 *622
 
 III. Whether disbarment is the appropriate sanction under the circumstances of this case.
 

 IV. Whether McIntyre is entitled to the counsel of his choosing.
 

 ¶ 9. This Court has “exclusive jurisdiction and inherent jurisdiction of matters pertaining to attorney discipline.”
 
 Broome v. Miss. Bar,
 
 603 So.2d 349, 354 (Miss.1992). This Court sits as the trier of fact and is not bound by a substantial-evidence or manifest-error rule.
 
 Asher v. Miss. Bar,
 
 661 So.2d 722, 727 (Miss.1995). “When reviewing attorney disciplinary matters, this Court reviews evidence de novo, and no substantial evidence or manifest error rule shields the tribunal from scrutiny; however, we may give deference to findings of the tribunal due to its exclusive opportunity to observe the demeanor and attitude of witnesses, including the attorney, which is vital in weighing evidence.”
 
 Miss. Bar v. Logan,
 
 726 So.2d 170, 175 (Miss.1998) (citing
 
 Parrish v. Miss. Bar,
 
 691 So.2d 904, 906 (Miss.1996)). The Bar has the burden to prove by clear and convincing evidence that an attorney’s actions constitute professional misconduct.
 
 Id.
 

 I. WHETHER THE TRIBUNAL ERRED WITH REGARD TO MISAPPROPRIATION OF FUNDS AND THE RELEVANT BURDEN OF PROOF.
 

 ¶ 10. McIntyre argues that the Bar never charged him with misappropriation, and to now find him guilty of this charge would violate his due process rights. We find this contention to be without merit. Paragraph 23, section “B” of the formal Complaint states that “McIntyre’s client and/or third party funds were not safe from being appropriated by Mr. McIntyre and others for personal or business purposes.” This allegation by the Bar is sufficient to place McIntyre on notice that his alleged misappropriation of client funds was at issue.
 

 ¶ 11. McIntyre also alleges that the burden of proof was wrongly placed upon him to prove that he did not misappropriate his clients’ funds. The record shows that this was not the case. Evidence was introduced to show that McIntyre consistently had taken funds from his lawyer trust account to pay personal and business expenses. This Court has held that “[w]hen a lawyer receives and deposits in his trust account funds belonging to others, and prior to disbursing any of such funds to the lawful payees, the trust account shows a total deposit less than the amount he had been entrusted with, this supports the conclusion that the attorney has converted funds to an unauthorized and unlawful use.”
 
 Reid v. Miss. Bar,
 
 586 So.2d 786, 788 (Miss.1991).
 

 ¶ 12. McIntyre’s lawyer trust account records indicate that the account balance was less than the amount entrusted to him on several occasions throughout the four-year period between 2001 and 2004. The records show that the trust account was overdrawn and that checks were written for personal and business expenses from the account, which rendered the balance lower than it should have been. The records further reflect that McIntyre misappropriated at least nine different clients’ funds from 2001 through 2004. The funds were used for various purposes including living or medical expenses for other clients and paying bank fees for overdrafting the trust account. Regardless of whether McIntyre eventually replaced the money, he violated the Rules of Professional Conduct at the time he initially misused money from the account — no matter how briefly he kept it. This Court has said, “restitution by an attorney of funds previously misappropriated does not mitigate the of
 
 *623
 
 fense.”
 
 Cotton v. Miss. Bar,
 
 809 So.2d 582, 587 (Miss.2000) (quoting
 
 Clark v. Miss. State Bar Ass’n,
 
 471 So.2d 352, 357 (Miss.1985)). Therefore, the tribunal correctly found that the Bar proved misappropriation by clear and convincing evidence.
 

 II. WHETHER THE TRIBUNAL ERRED IN FINDING THERE WERE NO MITIGATING FACTORS THAT FAVORED MCINTYRE.
 

 ¶ 13. McIntyre contends that some of the mitigating factors listed in Section 9.32 of the ABA Standards for Imposing Lawyer Sanctions are applicable to him, and that the tribunal failed to consider the mitigating factors he presented. Specifically, he asserts that the factors of cooperative attitude toward proceedings, absence of a dishonest and selfish motive, delay in disciplinary hearing, character or reputation, and remoteness of prior offenses weigh in his favor.
 

 ¶ 14. An attorney accused of misconduct may offer this Court any mitigating factors which he or she thinks serve to diminish his culpability and subsequently diminish the severity of the sanction to be imposed by this Court.
 
 See Vining v. Miss. State Bar Ass’n,
 
 508 So.2d 1047, 1049 (Miss.1987). The tribunal is not required to accept mitigation evidence as absolute truth, but must determine how much weight to accord the evidence presented. With regard to the mitigation evidence presented, the tribunal said:
 

 Mr. McIntyre offered evidence in mitigation, including testimony and affidavits of several former judges and public officials, currently practicing attorneys, a client whom he had defended in contact disputes, a Certified Public Accountant, and his current legal secretary. While the former judges, public officials, and practicing attorneys gave opinions as to Mr. McIntyre’s general honesty and abilities as an attorney, none of them had specific or personal knowledge about how Mr. McIntyre had managed his Lawyer Trust Accounts. The non-attorneys had no knowledge of attorneys’ ethical obligations regarding clients’ funds and property. The client who testified had never won a judgment or settlement involving funds or property that Mr. McIntyre was obligated to hold in trust.
 

 The tribunal then ruled that none of the mitigating factors listed in ABA Standard 9.3 apply in the present matter.
 

 Cooperative Attitude Toward Proceedings
 

 ¶ 15. McIntyre asserts that his cooperative attitude in admitting to commingling funds should weigh in his favor for mitigation purposes. However, McIntyre filed numerous pretrial motions, including one asserting vindictive prosecution. Although McIntyre ultimately acquiesced to the proceedings, the filing of several motions to dismiss the proceedings indicates that McIntyre was not as cooperative as he asserts. Therefore, this mitigating factor is inapplicable.
 

 Absence of a Dishonest and Selfish Motive
 

 ¶ 16. The next mitigating factor McIntyre argues should apply is his absence of a dishonest and selfish motive. McIntyre argues that the commingling was not something he “set out to do,” nor was it done with sense of greed. He also claims the commingling originated with his bank’s practice of illegally drafting his lawyer trust account to pay into other accounts. He goes on to say that he continued with this misconduct because he feared financial disaster would result if the
 
 *624
 
 bank called all of his notes for payment. McIntyre admits in his brief that he “could have ceased the conduct of the bank from debiting the account,” but did not because the bank had “taken over his business,” and he feared financial ruin. This admission is indicative of a selfish motivation, and therefore this mitigating factor is inapplicable.
 

 Delay in Disciplinary Hearing
 

 ¶ 17. The present complaint involves charges regarding irregularities in McIntyre’s trust account from 2001 through 2004. However, the formal complaint was not filed until 2008. After the complaint was filed, McIntyre placed his lawyer trust account in a separate bank from his operating account. McIntyre alleges that the delay in bringing the proceedings allows this Court to review the subsequent behavior of McIntyre to determine whether he has corrected the problem and whether it is likely to occur again. Because McIntyre has taken steps to correct the problem at issue and to prevent it from occurring in the future, this mitigating factor is applicable in the present matter.
 

 Character or Reputation
 

 ¶ 18. The tribunal found that the evidence offered in support of McIntyre’s good character or reputation was flawed because no witnesses had knowledge of how his lawyer trust account was managed. However, knowledge of McIntyre’s character and reputation are not entirely dependent upon knowledge of how he manages his business and personal finances. The individuals who testified or submitted affidavits are not required to be completely informed of all McIntyre’s doings.
 

 ¶ 19. Members of the Bar testified that McIntyre had “been a good lawyer over the years,” he had always “been very straight, open and aboveboard,” and that McIntyre was “a person of integrity.” A former client testified that McIntyre did an “excellent” job representing him and that he considered McIntyre to be honest and trustworthy.
 

 ¶ 20. Furthermore, several other members of the Bar filed affidavits on McIntyre’s behalf, some of which stated McIntyre “is an honest and trustworthy person and a credit to the Mississippi State Bar Association,” and that he was “civil minded, professional.” Finally, the affidavits spoke to McIntyre’s service to those in need. One attorney who formerly worked for McIntyre stated, “I never saw Mr. McIntyre turn down a person in need of legal assistance simply because he or she could not pay. I dare say that very few attorneys have done more for needy people in Mississippi than James McIntyre.”
 

 ¶ 21. While those who testified may not have been aware of the manner in which McIntyre had handled his business and personal finances, they did present evidence that McIntyre is, in their opinion, generally of good character. Therefore, this mitigating factor is applicable in the present matter.
 

 Remoteness of Prior Offenses
 

 ¶22. The final mitigating factor on which McIntyre relies is the remoteness of his prior offenses. McIntyre previously has been disciplined by the Mississippi Bar for five minor violations of the Rules of Professional Conduct, which are discussed in more detail in Section III. Furthermore, McIntyre previously has been suspended from the practice of law for one year for obtaining a loan from a client in violation of the Rules of Professional Conduct. These instances occurred in 2006, 2005, two in 2001, 1992, and 1988.
 

 ¶ 23. McIntyre contends that since he has only one prior major violation and only
 
 *625
 
 a few minor offenses in the past, this factor should mitigate the severity of the sanction imposed in the present matter. The only major violation occurred in 1988. However, his most recent offense was in 2006. While he received only a private reprimand, it is hard to say that this offense is remote in time. Therefore, this mitigating factor is inapplicable in the present matter.
 

 ¶ 24. McIntyre contends that his cooperative attitude toward the proceedings, the absence of a dishonest and selfish motive, the delay in the disciplinary hearing, his character or reputation, and the remoteness of his prior offenses all are applicable mitigating factors to be considered. The tribunal considered all of the potential mitigating factors and determined that each was inapplicable. After review, it is clear the tribunal erred in finding the evidence of McIntyre’s good character and the evidence that he had corrected the problems with his lawyer trust account to be inapplicable. Nonetheless, the existence of mitigating factors does not necessarily require that a less severe sanction be issued, but must be examined in light of the circumstances of the offense, the aggravating factors, and the purposes of attorney discipline.
 
 See Miss. Bar v. Pels,
 
 708 So.2d 1872, 1376 (Miss.1998) (The Court considered the totality of the circumstances in imposing lawyer discipline.).
 

 III. WHETHER DISBARMENT IS THE APPROPRIATE SANCTION UNDER THE CIRCUMSTANCES OF THIS CASE.
 

 ¶25. Nine factors must be considered in order to determine whether disbarring McIntyre is the appropriate sanction.
 
 Liebling v. The Mississippi Bar,
 
 929 So.2d 911 (Miss.2006) Those nine factors are:
 

 (1) The nature of the misconduct involved; (2) the need to deter similar misconduct; (3) the preservation of dignity and reputation of the legal profession; (4) the protection of the public; (5) sanctions imposed in similar cases; (6) the duty violated; (7) the lawyer’s mental state; (8) the actual or potential injury resulting from the misconduct; and (9) the existence of aggravating or mitigating factors.
 

 Id.
 
 at 918 (quoting
 
 Miss. Bar v. Walls,
 
 890 So.2d 875, 877 (Miss.2004)). “The purpose of discipline is not simply to punish the guilty attorney, but to protect the public, the administration of justice, to maintain appropriate professional standards, and to deter similar misconduct.”
 
 Miss. State Bar Ass’n v. A Miss. Attorney,
 
 489 So.2d 1081, 1084 (Miss.1986). Commingling of client funds is considered to be the “cardinal sin of the legal profession.”
 
 Miss. Bar v. Coleman,
 
 849 So.2d 867, 874 (Miss.2002).
 

 ¶26. Regarding the first of the nine factors, this Court has said, “[t]here can be no more damaging evidence, however, as to a lawyer’s fitness to practice law than mishandling a trust account.”
 
 Reid v. Miss. Bar,
 
 586 So.2d 786, 788 (Miss.1991). Furthermore, “[t]here may be worse sins, but the ultimate wrong of a lawyer to his profession is to divert clients’ and third parties’ funds entrusted to him to an unauthorized use.”
 
 Id.
 
 This Court has said that an attorney who misuses his client’s money “exhibits a character trait totally at odds with the purposes, ideals and objectives of our profession.”
 
 Id.
 

 ¶ 27. It is important to deter this type of conduct in the future, because the dignity and reputation of the legal profession is dependant upon the trustworthiness and reliability of the individual members of that profession. Consistent patterns of commingling and misappropriation, such as in the present case, generally are de
 
 *626
 
 serving of harsh sanctions which serve to protect the public from greater harm. This Court has said, “[w]e have rarely treated commingling and conversion cases lightly.”
 
 Coleman,
 
 849 So.2d at 876 (Miss. 2002). McIntyre clearly has violated the duty to safeguard his clients funds.
 

 ¶ 28. Looking to the fifth factor, this Court has seen numerous cases involving commingling of client funds, and there is no consistent pattern in the sanctions imposed in those cases. Attorneys have been disbarred or have received long suspensions numerous times for commingling and misappropriation of client funds.
 
 See Miss. Bar v. Sweeney,
 
 849 So.2d 884 (Miss. 2003) (three-year suspension for one instance of misappropriating the funds of an estate);
 
 Miss. Bar v. Coleman,
 
 849 So.2d 867 (Miss.2002) (three-year suspension for one instance of commingling, misappropriation, and conversion of client funds);
 
 Cotton v. Miss. Bar,
 
 809 So.2d 582 (Miss.2000) (attorney disbarred for misappropriating funds, failing to pay client’s medical bills with said funds, resulting in client being sued);
 
 Haimes v. Miss. Bar,
 
 601 So.2d 851 (Miss.1992) (attorney disbarred for one instance of mishandling and misappropriating guardianship funds);
 
 Reid v. Miss. Bar,
 
 586 So.2d 786, 788 (Miss.1991) (attorney disbarred for converting funds for “unauthorized and unlawful use”);
 
 Miss. State Bar v. Odom,
 
 566 So.2d 712 (Miss. 1990) (three-year suspension for misappropriating funds belonging to the executrix of an estate);
 
 Foote v. Miss. State Bar Ass’n,
 
 517 So.2d 561 (Miss.1987) (attorney with no previous disciplinary record disbarred for misappropriation of client funds, although restitution was made and the attorney cooperated with the proceedings); and
 
 Clark v. Miss. State Bar Ass’n,
 
 471 So.2d 352 (Miss.1985) (attorney disbarred after misappropriating the funds of a conservatorship and misrepresenting his actions to his client and the trial court).
 

 ¶ 29. However, there have been cases where this Court has been more lenient with lawyers who have misappropriated funds.
 
 See Catledge v. Miss. Bar,
 
 913 So.2d 179 (Miss.2005) (attorney suspended for ninety days when he misappropriated a client’s funds, but funds were available at all times to make the client whole);
 
 Miss. Bar v. Gardner,
 
 730 So.2d 546 (Miss.1998) (attorney suspended for one year in a reciprocal-discipline matter where he misappropriated multiple clients’ funds);
 
 Miss. Bar v. Pels,
 
 708 So.2d 1372 (Miss.1998) (attorney suspended for thirty days for misappropriating funds in a reciprocal-discipline matter), and
 
 Pitts v. Miss. Bar,
 
 462 So.2d 340 (Miss.1985) (attorney suspended for thirty days after failing to place a minor’s funds in a savings account for more than nine years).
 

 ¶ 30. Despite these inconsistencies, this Court has trended toward harsher sanctions when a lawyer has committed the “cardinal sin” of law practice and misappropriated money belonging to his client. Our precedent clearly supports McIntyre being disbarred, particularly in light of the fact that the complaint at issue included multiple instances of commingling over a prolonged period of time. The misappropriation and commingling of client funds and the dishonesty involved therein goes to the very heart of McIntyre’s ability to practice law and to be put in a position of trust. In the famous words of former Supreme Court Justice Armis Hawkins, “If creditors are hounding a lawyer, he can take bankruptcy. If he is hungry, he can go to the Salvation Army. But mishandling other peoples’ money is a thought he should never entertain.”
 
 Reid,
 
 586 So.2d at 788.
 

 ¶ 31. We next look at the lawyer’s mental state and the actual or potential injury resulting from the misconduct. No evi
 
 *627
 
 dence was presented that McIntyre has any mental disorder thus, no further discussion is warranted. Despite McIntyre’s claims that he returned the money to the trust account, it is unclear exactly when the funds were replaced. Nonetheless, even if the funds were replaced after only a short period, the client lost use of the funds for that time, giving rise to an actual injury. Furthermore, the potential for the clients’ total loss of use of the funds made the potential injury great.
 

 ¶ 32. Lastly, where aggravating and/or mitigating circumstances are present, the severity of the sanction may be adjusted accordingly. The mitigating circumstances were discussed in Section II,
 
 supra.
 
 Therefore, only aggravating circumstances will be discussed here.
 

 ¶ 33. This Court has held that having received prior disciplinary sanctions is an aggravating circumstance.
 
 Haimes v. Miss. Bar,
 
 601 So.2d 851 (Miss.1992). McIntyre previously has been disciplined by the Bar for advancing money to a client in violation of Rule 1.8(e), failing to implement measures within his firm to ensure all lawyers in the firm comport with the Rules of Professional Conduct in violation of Rule 5.1, failing to respond to a lawful demand for information from a disciplinary authority in violation of Rule 8.1(b), failing to act with reasonable diligence and promptness in representing a client in violation of Rule 1.3, failing to keep a client reasonably informed about his or her matter in violation of Rule 1.4, failing to explain a matter to a client to the extent necessary for the client to make informed decisions, and failing to abide by the client’s decision in violation of Rule 1.2(a) and Rule 1.4(b). The Bar considered these to be minor ethical violations. McIntyre also has previously been suspended for one year for obtaining a loan from a client in violation of Disciplinary Rules 1-102(A)(1, 5 and 6)
 
 [5]
 
 and 5-104(A).
 
 [6]
 

 ¶ 34. These prior sanctions indicate a pattern of misconduct and serve as an aggravating circumstance. McIntyre also has been practicing law for more than forty years. McIntyre argues that six ethical violations over a forty-year career— five of which were deemed “minor” — do not warrant aggravation. However, because of the amount of time he has spent in the legal profession, McIntyre is, or should be, well aware of the duties he owes to his clients and the profession in general. Therefore, this aggravating factor outweighs the mitigating factors discussed in Section II.
 

 IV. WHETHER McINTYRE IS ENTITLED TO THE COUNSEL OF HIS CHOOSING.
 

 ¶ 35. Finally, McIntyre argues that he has the right to be represented by the attorney of his choosing. The attorney he initially chose was Michael Martz, former general counsel for the Bar. Martz was the attorney for the Bar when McIntyre was prosecuted for an ethical violation in 1988.
 

 ¶36. The Bar counters that, since it pleaded prior discipline as an aggravating circumstance, Martz was precluded from representing McIntyre because of his involvement in the prior discipline of Mcln-
 
 *628
 
 tyre and the possibility of Martz being a fact witness testifying regarding aggravating factors. The Bar relies on Rule 1.9 of the Mississippi Rules of Professional Conduct, which states, “[a] lawyer who has formerly represented a client in a matter shall not thereafter ... represent another in the same or a substantially related matter in which that person’s interests are materially adverse to the interests of the former client unless the former client consents after consultation.” The Bar takes the position that it will not allow Martz to represent any attorneys in discipline cases if the attorney has received more than a private reprimand from the Bar during Martz’s tenure as general counsel.
 

 ¶ 37. The Bar specifically asserts that there was a conflict of interest, and under Rule 1.9, where a conflict exists, the opposing party must waive that conflict. The Bar has refused to waive the conflict here. Therefore, McIntyre’s claim fails as a matter of law. Furthermore, McIntyre was adequately represented by two attorneys of his choosing before the Tribunal and before this Court.
 

 ¶ 38. McIntyre alleges that he has a constitutional right to have Martz represent him in this matter. McIntyre’s argument is based on prior law from this Court stating that attorney discipline actions are quasi-criminal in nature.
 
 Goeldner v. Miss. Bar,
 
 891 So.2d 130 (Miss.2004). It is his position that his rights under the Sixth Amendment have been violated.
 

 ¶ 39. This Court previously has stated that disciplinary proceedings are inherently adversarial, therefore, attorneys must be afforded due process of law.
 
 Alexander v. The Miss. Bar,
 
 651 So.2d 541, 546 (Miss.1995);
 
 Harrison v. Miss. Bar,
 
 637 So.2d 204, 218 (Miss.1994);
 
 Miss. State Bar v. Young,
 
 509 So.2d 210, 212 (Miss. 1987);
 
 Miss. State Bar v. Attorney L.,
 
 511 So.2d 119, 122 (Miss.1987). However, this Court also has stated that “there are ... numerous ‘rights’ which have no place in bar disciplinary proceedings.”
 
 Young,
 
 509 So.2d at 212-213. We previously have held that attorney-discipline cases do not trigger all constitutional rights.
 
 Goeldner,
 
 891 So.2d 130 (no right to effective counsel under the Sixth Amendment in a hearing before the Complaint Tribunal). Therefore, McIntyre’s contention that his Sixth Amendment rights were violated is without merit.
 

 CONCLUSION
 

 ¶ 40. McIntyre admitted to committing the “cardinal sin” of law practice by commingling his clients’ funds. Mitigating factors were presented to the tribunal and found to be inapplicable. On review, we found that two were applicable: evidence of McIntyre’s good character and reputation, and the steps McIntyre has taken to correct the problem at issue since the time the complaint was filed. However, these mitigating factors still were outweighed by the aggravating factors. Each of the nine factors required for lawyer sanctioning were considered, and this Court finds that disbarment is warranted in the present matter. Finally, McIntyre was not entitled to the counsel of his choosing when that counsel was barred by Rule 1.9 of the Mississippi Rules of Professional Conduct from representing McIntyre. Therefore, we affirm the Complaint Tribunal’s judgment disbarring McIntyre.
 

 ¶ 41. AFFIRMED.
 

 WALLER, C.J., CARLSON, P.J., DICKINSON, RANDOLPH, LAMAR, KITCHENS AND CHANDLER, JJ. CONCUR. GRAVES, P.J., CONCURS IN RESULT ONLY.
 

 [1]
 

 . A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, or administrative proceedings....
 

 [2]
 

 . A lawyer shall hold clients’ and third persons' property separate from the lawyer’s own property. Funds shall be kept in a separate trust account.... Other property shall be identified as such and appropriately safeguarded. Complete records of such trust account funds and other property shall be kept and preserved by the lawyer ...
 

 [3]
 

 . [A] lawyer ... in connection with a disciplinary matter, shall not ... knowingly fail to respond to a lawful demand for information from an admission or disciplinary authority....
 

 [4]
 

 . It is professional misconduct for a lawyer to: (a) violate or attempt to violate the rules of professional conduct ..., (d) engage in conduct that is prejudicial to the administration of justice.
 

 [5]
 

 . DR1-102(A)(1, 5 and 6) provided that an attorney shall not violate a disciplinary rule or engage in conduct that is prejudicial to the administration of justice or conduct that adversely reflects on his fitness to practice law.
 

 [6]
 

 . DR5-104(A) provided that a lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise his professional judgment therein for the protection of the client, unless the client has consented after full disclosure.